MilligaN, J.,
delivered the opinion of the Court.
This is a motion to revive a judgment rendered in the County Court of Sumner, in March, 1861, for $1,578, in favor of J. L. Bugg, Clerk and Commissioner, against the defendants. The Court refused the application, and an appeal in error is prosecuted to this Court.
The facts necessary to be noticed, are as follows: John Henly, the father of the plaintiffs in this motion, died in Sumner County in 1842, after having first made and published his last Will and testament, in which his wife was named as executrix, and by which he devised and bequeathed, with nominal exceptions, all his property, real and personal, to his wife, for life, with remainder over at her death, to certain of his children therein named.
At the death of the widow, Elijah Boddie was appointed administrator cum testamento annexo. He found it impracticable to-divide the negroes as directed in the Will, and filed a petition in the County Court, to have them sold, and the proceeds distributed, according to the provisions of the Will. Under this proceeding, which appears to have been in conformity *474 to law, the negroes were sold by tbe Clerk, and the defendant in this motion, John Franklin, became the purchaser of Charles, one of the slaves, at the sum of $1,565, for which he executed his note, with John Flease as his security, to J. L. Bugg, Commissioner, etc., due and payable twelve months from date. The sale was on the 28th of January, 1860, and the note bears the same date. At the March Term of the Court, 1861, a final decree was pronounced in the cause, in which all the equities of the parties were declared, and a portion of the notes executed for the sale of the negroes, directed to be delivered to the devisees entitled thereto, under the Will; and at the same term, and in the same decree, a judgment by motion was rendered against the defendants on this note, for $1,578, in favor of J. L. Bugg, Commissioner, etc. By the same decree, the Clerk is directed, as Commissioner, to collect the money still due on the sale note, and distribute it to the parties entitled thereto, under the Will.
In obedience to this decree, on the 2d of January, 1864, an execution issued on the judgment rendered against the defendants in this motion, which came to the hands of the Sheriff of the county, Gf. Love, and which, after great delay, was returned indorsed, “Satisfied in full — February 1st, 1862.”
The payment of the execution, as it appears from the proof, was Confederate Treasury notes, and the same, as the Clerk states, was shortly thereafter, duly paid over to him; and he thereupon made the following entry in his execution docket:
*475 “Received, of G-eo. Love, Sheriff, sixteen hundred and fifty-nine dollars and eighteen cents, in full of Janies Franklin’s note. Feb. 1st, 1862.
“John L. Bugg, Clerk.”
A portion of this fund, as it appears, was paid over to the devisees, but how much is not very accurately shown; and a paper, with many of the papers of the Clerk, was lost during the war. The de-visees entitled to the fund under the Will, were not all satisfied, and the record is silent as to any effort on the part of the Clerk, while the fund was in his hands, to meet the express injunction in the decree.
Under this' state of facts, was the payment in Confederate Treasury notes a satisfaction of the execution, and an extinguishment of the judgment? We have held, that Confederate Treasury notes were issued without lawful authority, against public policy, and for an illegal and treasonable purpose, and that the courts of the country would not lend their active aid. to enforce contracts founded upon them. But, for the repose of society, when contracts, or other transactions were executed, we would not, although originally predicated upon Confederate Treasury notes, disturb them. This rule, we think, more nearly conforms to the principles of established law and sound policy, and more directly meets the torn and distracted condition of the country, than any other we could establish. It is true, it does not meet every contingency, nor can any other rule be declared that will do so. Hardships and losses must fall somewhere, and like the casualties of fire, earthquakes and death, must *476 be borne by those who are the lawful holders of the money, or property, at the time they fall upon them.
The principles of the cases of Crutchfield vs. Rollins, Tangly & Co., 5 Hum., 15, and Pennington vs. McWhirter, 8 Hum., 130, referred to in argument, are not applicable to this case. They hold that a judgment is not discharged by payment to a Clerk or Sheriff, property or evidences of debt, or any thing but money or current bank notes, if the latter be not objected to before their reception. This case stands on a different principle altogether.
We have never recognized the power of the Confederate States to coin money or issue Treasury notes. But, as a fact, it is well known that they did issue Treasury notes, which for a time within the revolted States, served the purposes of money, and exchanged property from hand to hand. But still, these notes were not money, or its lawful representative, in any sense in which a Court, State or Federal, setting under the Constitution and authority of the United States, could recognize. But the public policy of the times, which, like fraud, can never be defined, but is ever-fluctuating and varying with the habits and fashion of the day, the growth of commerce and usages of trade, as well as the prosperity and public misfortunes of the people, demand that settled transactions and executed contracts should remain forever at rest. This case falls under this rule. The judgment of the Clerk, and he as Trustee, was responsible over and under his bond, as Commissioner, to the plaintiff in the motion.
He collected at his peril, the judgment, and was *477 not legally bound to receive in satisfaction of it, anything but money; but he chose, without objection, to take Confederate Treasury notes, and voluntarily entered a satisfaction of the judgment upon his execution docket. More than this, the record does not show that he made any effort, as directed by the decree, to distribute the fund to those entitled to it under the Will. It died on his hands, and was lost in the casualties of the war; and it is now too late to set aside the satisfaction of the judgment, and compel the defendants to re-pay it..
Judgment affirmed.